UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------
UNITED STATES OF AMERICA,

-vs-

                                            #99-CR-131A

MOHAMMED KAID,
                Defendant.
-----------------------------------------------------------------------

### DEFENDANT'S SENTENCING SUBMISSION

### AND

### MEMORANDUM OF LAW

Dated:  October 7, 2005
         Buffalo New York

                                              NELSON S. TORRE, ESQ.
                                              Attorney for Defendant
                                              1220 Liberty Building
                                              424 Main Street
                                              Buffalo, New York    14202
                                              (716) 854-2808

TO:    AUSA Anthony Bruce,
         Organized Crime Strike Force Chief
         Federal Centre
         138 Delaware Avenue
         Buffalo, New York 14202

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------
UNITED STATES OF AMERICA,

-vs-                                           **MEMORANDUM OF LAW**

                                               #99-CR-131A

MOHAMMED KAID,
               Defendant.
-----------------------------------------------------------------------

**PRELIMINARY STATMENT**

The defendant, along with over 30 co-defendants, was charged by Indictment with Conspiracy to violate the Contraband Cigarette Trafficking Act in violation of 18 USC §1962 (d) between 1994 and 1998.

The defendant, by Plea Agreement entered February 10, 2004, admitted under Count 100 of the Indictment to smuggling cigarettes to avoid paying excise taxes in violation of 18 USC §1962 (d).

This Submission and Memorandum will address the following issues relevant to sentencing that is currently scheduled for October 31, 2005 at 1:00pm.

1. Whether there should be a role adjustment pursuant to USSG § 3B1.1 (a) (Upward adjustment if the defendant was the organizer and/or leader of criminal activity involving 5 or more participants;

2. Whether there should be an upward adjustment pursuant to USSG §3B 1.3 (Use of a Minor to Commit the Offense);

3. Whether the defendant qualifies for a downward departure pursuant to USSG §5H 1.4 (Extraordinary Physical Impairment as a Basis for Downward Departure).

4. Whether defendant qualifies for a Downward Departure pursuant to USSG §5K2.0 due to vulnerability in prison.

The Plea Agreement at Paragraph 7 reserved to the defendant his right to dispute any upward departure requested by the government.

## DISCUSSION

### I. Enhancing Defendant's sentence under USSG § 3B1.1 is unconstitutional and cannot be supported by the weight of the evidence.

In light of <u>United States v. Booker</u>, 125 S. Ct 738 (2005) the government has failed to meet its factual burden to warrant a sentence enhancement without violating the Sixth Amendment of the United States Constitution.

In light of <u>United States v. Booker</u>, 125 S. Ct 738 (2005) the enhancement under § 3B1.1 of the Unites States Sentencing Guidelines (hereinafter "USSG §3B1.1") is not only unwarranted, but unconstitutional.  <u>Booker</u> clearly states, ". . . Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." <u>Id.</u> at 756.  The Presentence Investigation Report (hereinafter "PSR") states that, "From information provided to this officer, it is this officer's assessment that the defendant was an organizer of this activity. . ." The PSR assessment is legally insufficient to expose the defendant to substantially greater prison time where there was no admission or finding beyond a reasonable doubt that defendant was a "leader or organizer."

Simply stated, ". . . consent to judicial factfinding cannot be found in an ordinary plea agreement . . ." <u>United States v. Amiker</u>, 414 F.3d 606, 607 (6th Cir. 2005). Furthermore, The Court found that ". . . all plea agreements require, whether explicitly

or implicitly, [is] that a defendant agree to sentencing under the Guidelines.  Where this requirement is spelled out, we see no reason to imply consent to judicial factfinding . . ." *Id*. at 607-08.  Concluding that Mohammed Kaid is deserving of a USSG §3B1.1 enhancement reads into the plea agreement consent for the court to improperly surmise facts not found by a jury beyond a reasonable doubt as to this particular defendant.  It is noteworthy that other similarly situated defendants in this case were not more greatly punished for an alleged leadership role enhancement.

Defendant clearly did not concede or stipulate to being a "leader or organizer" as contemplated under USSG§3B1.1.  Defendant's counsel explicitly reserved the right to object to a sentence enhancement based on such a charge.  (Plea Agreement, pg. 7).

Applying a sentence enhancement for something Defendant neither admitted nor was found guilty of by a jury, is a clear violation of his Sixth Amendment right to "trial by jury."  By enhancing Defendant's sentence four levels under USSG §3B1.1(a) the Court is deciding facts that should have been stipulated to or submitted to a jury.  The basic requirement is that a USSG §3B1.1(a) enhancement is only warranted where the Defendant is engaged as a leader in criminal activity that involved five or more participants or was otherwise excessive . . ."  The USSG § 3B1.1 (a) enhancement is a matter of controversial fact that should be proven beyond a reasonable doubt.  (*see* United States v. Evans, 272 F.3d 1069, 1084-1085 (8th Cir. 2001) (discussing what constitutes being a "participant" under USSG §3B1.1(a)).

**The weight of the available evidence does not support a USSG§3B1.1(a) sentence enhancement as to defendant Mohammed Kaid.**

The trial testimony and other proof, furthermore, belies the government's argument that the Defendant's role was as a "leader or organizer," beyond a reasonable doubt.

The trial evidence extensively detailed the involvement of numerous individual defendants in purchasing untaxed cigarettes at Roseine's Smoke Shop upon Seneca Nation property and then transporting those untaxed cigarettes for resale locally or to Michigan in order to avoid paying state excise taxes.

The trial evidence clearly shows that defendant Mohammed Kaid did not conceive or begin the practice of such volume purchases of cigarettes at the Indian reservation for resale at large profits by evading the state excise taxes. To the contrary, the evidence showed that numerous defendants did so and each individually purchased their own orders of cigarettes and then transported such for delivery and resale.

The defendants clearly operated as independent contractors profiting from their own transactions and without organized activity directed or led by defendant. It is not enough that others happened to be engaged in the same practice as defendant since the evidence showed they were working for themselves.

In fact, the evidence showed that the various defendants were engaged in a competitive relationship with each other. For instance, according to the trial proof, defendant Mohammed Kaid appeared at Roseine's Smoke Shop and purchased all of the cigarettes in stock on one occasion such that defendants Ali Omar and Ali Kaid were unable to have their order filled (TT, pgs. 273-274). It is also noteworthy that defendant Mohammed Kaid purchased his own orders from Roseine's Smoke Shop and the

purchase orders were designed as such. (TT, pgs. 275-276). Individuals would have their own, separate orders that they would have filled. In one instance, Mohammed Kaid was in Roseine's while defendant Mohamed Abuhamra was filling his own order. (TT, pgs. 351-53). Mohammed Kaid, also known as "Jimmy," would pay for the cigarettes with money orders – he was the only Roseine's patron to do so. (TT, p. 35). When the cigarettes were to be paid, Roseine's owner, Linda Mohawk, and her store clerk, Cindy Jamerson, would go to Mohammed Kaid's Buffalo area convenience store to seek him out for payment. (TT, p. 37) Ms. Mohawk and Ms. Jamerson did not look to any others for payment of his orders, only the individually acting Mr. Kaid. Likewise, Mr. Kaid did not pay for or purchase orders of the other defendants.

Finally, the government may argue that Mr. Kaid used others to transport his cigarette orders. However, there was no evidence that such persons were "participants" or that Mr. Kaid used 5 or more persons to do so.

> **II.   Defendant did not use a minor to commit
> the plead to offense, therefore no
> USSG §3B1.4 enhancement is warranted.**

The Government no longer contends Defendant used a minor and has therefore withdrawn its request for a 2 level upward adjustment pursuant to USSG §3B1.4 (Use of a Minor to Commit the Offense). There was no evidence to support this argument and the PSR merely blindly adopted the government's anticipated motion from the Plea Agreement.

> **III.   Defendant qualifies for a downward departure
> under USSG § 5H1.4 due to his extraordinary
> physical impairment due to gun shot injuries suffered when his
> store was robbed, and other physical maladies.**

The defendant has extraordinary physical impairment and cannot be adequately attended to in prison. "An extraordinary physical impairment may be a reason to depart downward." 18 USSG § 5H1.4. "Extraordinary physical impairment," as defined in United States v. Altman, 48 F.3d 96 (2d Cir. 1995), is a condition in which the Bureau of Prisons would not be able to adequately care for the Defendant.

The Defendant suffered a shotgun wound to the abdomen and hip that has left him disabled and physically vulnerable. He has a pronounced limp and walks with a cane, and still suffers incredible pain, requiring daily pain management and care. A departure based on such an infirmity is not unprecedented. The Eastern District of New York in United States v. McClean, 822 F. Supp. 961 (E.D.N.Y. 1992) (downward departure because Prison rules would not allow the Defendant to use his crutches while in prison) granted a downward departure for a polio victim who needed the assistance of crutches. The ongoing medical care is necessary for Mr. Kaid to continue his rudimentary life activities. Incarceration would limit this care and would exacerbate his already ailing health. The relevant medical records of Mr. Kaid and a Physician's Affirmation from his doctor to support this application are being submitted under separate cover filed in hard copy with the Court.

### IV. Defendant qualifies for a USSG § 5K2.0 downward departure due to vulnerability in prison.

Simply stated, "A district judge may depart downward from the guidelines if he or she 'finds that there exists a . . . mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." United States v. Gonzales,, 945 F.2d 525, 526 (2d Cir. 1991) (quoting 18

U.S.C. § 3553(b)).  Furthermore, "Extreme vulnerability of criminal defendants is a factor that was not adequately considered by the Commission and a proper ground for departure under § 3553(b)."  United States v. Lara, 905 F.2d 599, 605 (2d Cir. 1990).  "Extreme vulnerability," naturally, changes as society changes.

In a post- September 11th world an individual of middle eastern decent such as Mohammed Kaid is more vulnerable to violence in the U. S. prison system.  Mohammed Kaid is from Yemen with a pronounced physical disability not only rendering him more susceptible to prison abuse, but also less able to defend himself.  The "Lackawanna Six" case from Buffalo, NY, received worldwide media attention and Mr. Kaid's origins from the same community will not be lost on the skin heads, neo-nazis, and other ultra-nationalists within the confines of the U.S. prison system.  Consideration of these factors is warranted as suggested by the U.S. Supreme Court's seminal decision in Koon v. United States, 518 U.S. 81 (1996).  The merits of doing so are heightened when the evolving standards under the Booker opinion are considered.  The Court has made clear that the Sentencing Guidelines are to be considered carefully but in an advisory capacity by the sentencing court.

The specific factors in this case and Mr. Kaid's vulnerability in prison were not contemplated by the Sentencing Commission and this would warrant a departure under USSG § 5K2.0(b)(2).  USSG § 5K2.0 Comment 2 (A) states that, "This policy statement covers departures from the applicable guideline range based on offense characteristics or offender characteristics of a kind, or to a degree, not adequately taken into consideration in determining that range."   The susceptibility of middle-eastern individuals to abuse,

ridicule, and harassment with a heightened risk of physical injury has increased over time and has not been reflected in the Guidelines.

## CONCLUSION

For the reasons cited herein, the Defendant respectfully requests that the Court grant the relief requested herein.

Dated:  October 7, 2005
        Buffalo, New York

                                        Respectfully Submitted,

                                        S/ Nelson S. Torre_____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------
UNITED STATES OF AMERICA,

-vs-

                                                   #99-CR-131A

MOHAMMED KAID,
        Defendant.
----------------------------------------------------------------------

## Certificate of Service

        I hereby certify that I am an employee of the Law Office of Nelson S. Torre, Esq., on October 7, 2005, I electronically filed the foregoing with the Clerk of the District Court using its CM/ECF system, which would then electronically notify the following CM/ECF participants on this case:

1.     AUSA ANTHONY BRUCE
       U.S. Attorney's Office
       138 Delaware Avenue
       Buffalo, NY 14202

And, I hereby certify that I have mailed the foregoing on the same date, by the United States Postal Service, to the following non-CM/ECF participants:

1..    USPO MICHAEL QUARANTILLO
       US Probation Office
       68 Court Street
       Buffalo, NY 14202

                                                                  S/ Marie Turner_____